UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARIN MICHAEL CHAMPINE,

                Petitioner,

v.

SHERMAN CAMPBELL,

                Respondent.

_____/

Case No. 2:17-cv-13697

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS [1],
DENYING A CERTIFICATE OF APPEALABILITY, AND
<u>DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL</u>**

The present action is a habeas case brought pursuant to 28 U.S.C. § 2254. Petitioner Darin Michael Champine was convicted of two counts of second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(a), three counts of gross indecency between a male and female, Mich. Comp. Laws § 750.338b, three counts of accosting a child for immoral purposes, Mich. Comp. Laws § 750.145a, and three counts of aggravated indecent exposure, Mich. Comp. Laws § 750.335a, following a jury trial in the Clare County Circuit Court in 2014. ECF 6-7, PgID 1158–59. He was sentenced to concurrent terms of 7 years 2 months to 15 years' imprisonment on the criminal sexual conduct convictions, 3 years 4 months to 5 years' imprisonment on the gross indecency convictions, 2 years 8 months to 4 years' imprisonment on the accosting convictions, and 1 year 4 months to 2 years' imprisonment on the indecent

1

exposure convictions. ECF 6-8. On November 13, 2017, Champine filed his habeas petition. ECF 1. For the following reasons, the Court will deny the habeas petition.

## BACKGROUND

Champine's convictions arose from his sexual conduct with three young girls—ST, TP, and KH—who were the children of friends of Champine, in Clare County, Michigan on various occasions between 2006 and 2008. ST first met Champine on a camping trip with her parents and family friends, Stan and Shelly Achram. ECF 6-4, PgID 488–89. Champine was Ms. Achram's brother. *Id.* at 489, 492. When Ms. Achram passed away, Mr. Achram started dating Amy Prater—TP's mother. *Id.* at 489; ECF 6-5, PgID 699. Champine lived with Mr. Achram and Ms. Prater, along with Ms. Prater's three children, including TP. ECF 6-4, PgID 492; ECF 6-5, PgID 705–06. ST and TP were close friends, and ST would often spend the night with TP. ECF 6-4, PgID 491. Champine made lewd and sexual comments to ST, inappropriately touched her, and exposed himself to her. *Id.* at 493–98. ST was twelve or thirteen at the time. *Id.* at 493.

TP was often present when Champine made sexual comments to and advances on ST. *Id.* at 498. Champine also made lewd and sexual comments towards TP, made her watch pornographic content with him, inappropriately touched her, exposed himself to her, and made her touch him. ECF 6-5, PgID 555–62. TP was seven or eight years old when Champine began living in Mr. Achram and her mother's house. *Id.* at 555.

KH and TP were friends and neighbors. *Id.* at 596–97. KH often hung out with TP and would have sleepovers. *Id.* at 598. Champine would play truth or dare with the girls. *Id.* at 599. Champine made KH and TP watch a pornographic movie with him, exposed himself to them, made them remove their clothes, masturbated in front of them, and inappropriately touched them. *Id.* at 600–05; ECF 6-6, PgID 883–84. Champine would tell the girls, "Whatever happens in this room stays in this room." ECF 6-5, PgID 563. KH was nine to twelve years old when the incidents occurred. *Id.* at 612.

Champine denied having any inappropriate contact with the girls, exposing himself, or making them watch pornographic movies. ECF 6-6, PgID 1055–57. Rather, he claimed that he was not in Clare County when the alleged incidents occurred, having traveled between California, Florida, Alaska, and other parts of Michigan. *Id.* at 1042–50. He did admit that he lived with Mr. Achram, but claimed it was only in 2002 or 2003. *Id.* at 1057–59.

Following his convictions and sentencing, Champine filed an appeal of right with the Michigan Court of Appeals raising several claims, including those presented on habeas review. The court of appeals denied him relief on those claims and affirmed his convictions and sentences. *People v. Champine*, No. 323018, 2015 WL 8278296 (Mich. Ct. App. Dec. 8, 2015). Champine then filed an application for leave to appeal with the Michigan Supreme Court. In lieu of granting leave to appeal, the court reversed in part and remanded the case to the trial court to determine whether it would have imposed a materially different sentence under the sentencing procedure

3

described in *People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (2015). The court denied leave to appeal in all other respects. *People v. Champine*, 499 Mich. 981 (2016).

On remand, the trial court ruled that it would not have imposed different sentences under advisory, rather than mandatory, guidelines. *People v. Champine*, No. 13-004668-FH (Clare Co. Cir. Ct. Nov. 29, 2016). Champine filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied for lack of merit. *People v. Champine*, No. 338078 (Mich. Ct. App. Sept. 15, 2017). Champine did not seek leave to appeal this decision with the Michigan Supreme Court. Champine thereafter filed his pro se federal habeas petition. ECF 1. He raises the following claims as grounds for relief: 1) sufficiency of the evidence; 2) validity of his sentencing guidelines; 3) constitutionality of appellate review; and 4) ineffective assistance of counsel. *Id.*

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2245, sets forth the standard of review that the Court must use when considering habeas petitions brought by prisoners challenging their state court convictions. Under the statute, the Court may not grant habeas relief to a state prisoner unless his claims were adjudicated on the merits and the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

The state court unreasonably applies Supreme Court precedent only when its application of precedent is "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal citations omitted). A merely "incorrect or erroneous" application is insufficient. *Id.* "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 654 (2004)).

A federal court reviews only whether a state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). A state court need not cite to or be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Decisions by lower federal courts "may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)).

On the other hand, the state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). Petitioner may rebut this

presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## DISCUSSION

I.  <u>Insufficient Evidence</u>

Champine first asserted that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his convictions. ECF 1, PgID 5. Specifically, he asserted that the prosecution failed to prove that he committed the offenses because the prosecution witnesses were not credible and that the prosecution failed to establish a timeline for the offenses. *Id.*

The due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

The Court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might

view facts differently" than a reviewing court on habeas review—the factfinder at trial and the state court on appellate review—as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788–89.

Under Michigan law, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. *People v. Yost*, 278 Mich. App. 341, 356 (2008). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466 (1993), including the identity of the perpetrator, *People v. Kern*, 6 Mich. App. 406, 409 (1967), and the defendant's intent or state of mind, *People v. Dumas*, 454 Mich. 390, 398 (1997). In criminal sexual conduct cases involving a child victim, "[t]ime is not of the essence, nor is it a material element." *People v Dobek*, 274 Mich. App. 58, 83 (2007). And the assertion of an alibi defense "does not make time of the essence." *Id.* Additionally, "[t]he testimony of a victim need not be corroborated." Mich. Comp. Laws § 750.520h.

Champine argued that he was not present at Mr. Achram's home or his own home during the time of the offenses and that the child victim's testimony was "contradictory and confused." ECF 1, PgID 5. The Michigan Court of Appeals denied relief based on his arguments. The court of appeals reasoned that "[i]t is within the jury's province to determine the credibility of all witnesses, including any whose testimony tends to establish an alibi." *Champine*, 2015 WL 8278296 at *1 (citing *People v. Diaz*, 98 Mich App 675, 682 (1980)). Because the jury convicted Champine of the charges, it necessarily determined that the victims were credible and that Champine was not credible. And the Court "is required to draw all reasonable inferences and make credibility choices in support of the jury verdict," and will therefore not interfere with the jury's credibility determination. *Id.* (citations omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The testimony of the victims discussing Champine's inappropriate sexual conduct toward them on various occasions from 2006 to 2008 when they were young girls provided sufficient evidence to support Champine's convictions of the charged offenses. A victim's testimony alone can be constitutionally sufficient to sustain a conviction, *see Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (collecting cases), and here, multiple victims provided corroborating testimony. Regardless, it is the job of the factfinder at trial, not a federal habeas court, to resolve such evidentiary conflicts. *See Walker v. Engle*, 703 F.2d 959, 969–70 (6th Cir. 1983).

Moreover, the prosecution was not required to prove specific dates or times for the offenses as time is not an element of criminal sexual assault crimes involving child victims, even when an alibi defense is raised. *See Dobek*, 274 Mich. App. at 83. The evidence presented at trial, viewed in the light most favorable to the prosecution, established beyond a reasonable doubt that Champine committed the charged offenses. More importantly, for purposes of habeas review, the Michigan Court of Appeals' decision to that effect, was not contrary to federal law and was reasonable. Habeas relief is therefore not warranted on this claim.

II.   Sentencing Guidelines and the Sixth Amendment

Champine next asserted that the trial court erred in scoring offense variables 4, 8, 9, and 10 of the Michigan sentencing guidelines and improperly relied upon facts neither admitted by him nor proven beyond a reasonable doubt in imposing his sentences in violation of his Sixth Amendment rights. ECF 1, PgID 7.

A sentence imposed within the statutory limits is generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). Champine's sentences are within the statutory maximums for his offense. *See* Mich. Comp. Laws §§ 750.520c(1)(a) (maximum sentence of 15 years' imprisonment); 750.338b (maximum sentence of 5 years' imprisonment); 750.145a (maximum sentence of 4 years' imprisonment); 750.335a (maximum sentence of 2 years' imprisonment). And a claim challenging the scoring of the sentencing guidelines' offense variables is not cognizable on federal habeas review because it is a state law claim. *See McPhail v.*

*Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). Champine's sentence is therefore insulated from habeas review absent a federal constitutional violation.

A sentence, however, may violate due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *Townsend*, 334 U.S. at 741. To prevail on such a claim, a petitioner must show that the state court relied on the allegedly false information. *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). Champine made no such showing. And the state court held a sentencing hearing and provided Champine with an opportunity to contest the sentencing decision. *See* ECF 6-8. His sentence therefore did not violate Champine's due process rights.

Champine further asserted that the trial court relied upon judicially found facts in imposing his sentence in violation of his Sixth Amendment rights. ECF 1, PgID 7. But the Michigan Supreme Court remanded the case to the trial court for a review of Champine's sentence on this issue. *Champine*, 499 Mich. at 981. The state trial court's review on remand renders this issue moot because Champine was given relief on this claim—the opportunity for re-sentencing under the now discretionary state sentencing guidelines.

And the trial court's reaffirmation of Champine's sentence after remand was not contrary to law and was reasonable. The reaffirmation was based on the trial court's discretion, and "[f]acts that the trial court may have found in support of its exercise of discretion do not implicate the Sixth Amendment." *Wiggins v. Balcarcel*, No. 18-CV-10124, 2018 WL 659280, *5 (E.D. Mich. Feb. 1, 2018) (denying habeas

relief on similar claim). There is no constitutional violation related to Champine's sentence. Habeas relief is therefore not warranted on these claims.

III.   <u>Constitutionality of Appellate Review and Disproportionate Sentence/Cruel and Unusual Punishment</u>

Champine next asserted that Michigan's appellate review system, which requires an appellate court to affirm a sentence that is within the guideline range unless there is a scoring mistake or inaccurate information, *see* Mich. Comp. Laws § 769.34(10), is unconstitutional. ECF 1, PgID 8. And he argued that his sentences are disproportionate and constitute cruel and unusual punishment. *Id.*

The Michigan Court of Appeals held that the sentencing appellate review system is not unconstitutional and that Champine's sentences are proportionate and do not constitute cruel and unusual punishment. *Champine*, 2015 WL 8278296 at *4–5. And the state court of appeal's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

First, Champine's claim that Mich. Comp. Laws § 769.34(10) violates the separation of powers between the legislative and the judicial branches of the Michigan government is not cognizable on habeas review because it is a state law issue. *See, e.g.*, *Jones v. Warren*, No. 2:06-CV-11113, 2010 WL 4366871, *4 (E.D. Mich. Oct. 28, 2010). Moreover, the Michigan Supreme Court has ruled that the statute is a valid exercise of legislative power that does not violate the separation of powers. *People v. Garza*, 469 Mich. 431, 433, 670 N.W.2d 662 (2003). Such a decision is insulated from federal habeas review. State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780. And

11

there is no federal right guaranteeing appellate review in state criminal cases. *See Abney v. United States*, 431 U.S. 651, 656 (1977).

Second, Champine's claim that his sentences are disproportionate is not cognizable on federal habeas review because it is a state law claim. *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). And, as discussed above, state courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780.

Third, Champine's sentence does not constitute cruel and unusual punishment under the Eighth Amendment. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin*, 501 U.S. at 965. A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (internal citation omitted). Here, Champine's sentences are within the statutory maximums for his multiple offenses. The state trial court acted within its discretion in imposing his sentences and there is no extreme disparity between his crimes and sentences so as to offend the Eighth Amendment. Habeas relief is therefore not warranted.

IV.    Ineffective Assistance of Counsel

Lastly, Champine asserted that he is entitled to habeas relief because his trial counsel was ineffective for failing to: (1) conduct adequate discovery (particularly as to Investigator Erica Vredevelt), (2) properly vet witnesses (namely Huey Lewis,

Brandon Hamilton, Jason Wolf, and Sheriff Wilson), and (3) adequately cross-examine the victims. ECF 1, PgID 10.

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received effective assistance of counsel. First, a petitioner must prove that his counsel's performance was deficient. *Id.* at 687. Second, a petitioner must establish that his counsel's deficient performance prejudiced the defense. *Id.*

To satisfy the first prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The Court's scrutiny of counsel's performance is highly deferential—there is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 689–90.

As to the second prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

Applying the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim. As to whether trial counsel conducted adequate discovery, the court of

13

appeals found that "counsel made numerous written requests for discovery, including for *Brady* material, impeachment evidence, any evidence of bias or motive to lie, as well as tangible objects." *Champine*, 2015 WL 8278296 at *5. And, even if additional evidence did exist, Champine failed to show that it would have made a difference in the outcome of the trial. *Id.* "The case ultimately rested on the victims' statements as to what defendant did." *Id.*

As to whether trial counsel adequately vetted witnesses, the court of appeals held that Champine's arguments were merely speculative and that the potential to impeach credibility did not deprive him of a substantial defense. *Id.* at *6–7 (citations omitted). As to whether trial counsel adequately cross-examined witnesses, the court of appeals held that counsel's decision not to ask the child victims whether Champine was circumcised fell under trial strategy and would not likely lead to his acquittal. *Id.* at *8.

The state court of appeal's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, as to discovery, the record indicated that trial counsel made numerous and adequate written requests for discovery. *See* ECF 6-9, PgID 1394–98. Although Champine contended that additional information concerning Investigator Vredevelt's background and bias should have been discovered and used at trial, he failed to show that those materials existed or that they would have affected the jury's verdict. The victims' testimony was the main evidence against Champine. Trial counsel extensively cross-examined the victims, as well as Vredevelt, and focused on her

interviews with the victims and other children. Because Champine failed to show that additional discovery would have affected the outcome at trial, he also failed to show that trial counsel was ineffective.

Second, as to investigating witnesses, it is well-settled that defense counsel must conduct a reasonable investigation into the facts of a defendant's case or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522–23. The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy, and when making strategic decisions, counsel's conduct is presumed to be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

Here, the record indicated that trial counsel sufficiently investigated potential witnesses and made strategic decisions about which witnesses to present at trial. Counsel listed 45 possible witnesses, including Huey Lewis and Brandon Hamilton, as well as 7 additional categories of possible witnesses. ECF 6-9, PgID 1402–05. Although Champine contended that counsel should have further investigated Lewis, Hamilton, Jason Wolf, and Sheriff Wilson and called them at trial, his claims about their testimony are purely speculative and conclusory. Champine offered no affidavits

15

or other evidence from those witnesses to show that they would have testified favorably for the defense. And conclusory allegations, without evidentiary support, are insufficient to warrant federal habeas relief. *See, e.g., Cross v. Stovall*, 238 F. App'x 32, 39–40 (6th Cir. 2007).

Moreover, Champine was not deprived of a substantial defense. The supposed testimony from the uncalled witnesses concerned the credibility of other witnesses and did not concern the facts of the crimes themselves, nor did it establish an alibi or actual innocence. Champine therefore failed to show that trial counsel was ineffective.

Third, as to questioning the victims about circumcision, Champine admitted that trial counsel was aware of the possible inquiry but believed that the question was inappropriate and offensive such that he made a strategic decision not to ask it. ECF 6-9, PgID 1370. Counsel's strategy in this regard was reasonable given that the victims may not have known what circumcision meant, the victims may have answered the question correctly (either due to personal knowledge or an accurate guess), Champine would have had to prove whether he was/was not circumcised, and the jury may have been offended by the discussion. The fact that counsel's strategy was unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Moreover, the record indicated that counsel made reasonable efforts to challenge the victims' testimony in other ways and to cast doubt upon their version of events. Champine failed to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is therefore not warranted.

16

## CONCLUSION

For the aforementioned reasons, Champine is not entitled to federal habeas relief on his claims. The Court will therefore deny his habeas petition.

Before Champine may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Champine can make no such showing. Accordingly, the Court denies Champine a certificate of appealability.

Lastly, an appeal from this decision cannot be taken in good faith. *See* Fed. R. App. P. 24(a). Accordingly, the Court denies Champine leave to proceed in forma pauperis on appeal.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Champine's petition for writ of habeas corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

17

**IT IS FURTHER ORDERED** that leave to proceed in forma pauperis on appeal is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: May 21, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 21, 2020, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

18